### HENRY LEWIS SLADE v. WINTHROP GILFORD SLADE

13 So. (2nd) 917                                    June Term, 1943
June 8, 1943                                        Division B

*Cobb, Cobb & McEntire, Thomas T. Cobb* and *Curtis Basch,* for appellant.

*Murray Sams,* for appellee.

THOMAS, J.:

In the initial controversy between the appellant and the appellee the latter was granted a divorce on the ground of desertion. A stipulation disposing the children was executed by the litigants, recognized by the chancellor and incorporated in the final decree. We will refer only to those parts of the decree and agreement as may be necessary to a determination of the correctness of the orders entered by the chancellor adjudicating subsequent efforts on the part of both the appellant and the appellee to modify, each to his own advantage, the provisions of the original decree settling the custody of the children and requiring payment of money by the father to the mother for their support during their periodical residence with her.

In the main suit it was ordered that each parent should have the custody of the children and enjoy their companionship at certain designated times of the year and the father was required to pay the mother each month the children remained with her one hundred dollars to cover usual expenses. Sums paid were not to aggregate more than nine hundred and fifty dollars in one year.

The decree provided that its terms regulating custody should obtain from year to year "unless . . . modified . . . by order of . . . Court," and the "Court [retained] jurisdiction . . . for the purpose of making an order modifying or changing the custody, management and control of the children."

The decree was entered in April, 1941.

It was stipulated, but not decreed, that either party to the suit could, during the month of August, 1942, "apply . . .

for an order . . . disposing of the custody, management and control of the children during the next ensuing twelve months." Evidently prompted by this agreement appellant sought in August of that year a revision of the decree so that he might have the infants in his keeping continuously and the appellee countered with a prayer for substantial increase in the amounts of the allotments. After hearing the testimony relevant to the petition and the answer the chancellor declined to disturb the custody of the children but entered final and supplemental orders each containing a provision claimed erroneous by appellant. In one he enlarged the monthly allowance from one hundred to one hundred and fifty dollars and in the other he granted the appellee one hundred and seventy-five dollars "to cover expenses of plaintiff [appellee] for traveling, board and lodging and to secure attendance of her witnesses, legitimately incurred by plaintiff, to appear, answer and defend against defendant's [appellant's] petition. . . ."

The challenged portions of these orders give rise to the questions whether (1) the increase in the award was warranted and (2) the chancellor had authority to assess as costs the personal expenses of appellee incident to her attendance at the hearing.

A solution of the first depends upon a construction of Chapter 16780, Laws of Florida, Acts of 1935 (Section 65.15, Florida Statutes, 1941) and its application to the facts developed in the testimony of the witnesses introduced by the parties. This act provides that when "the circumstances of the parties or the financial ability of the husband shall have been *changed* since the execution of such agreement" providing for the payment of support money, or the entry of a decree to that effect, either party may apply to a court of chancery "for an order . . . decreasing or increasing the amount" of the award and that the court "shall make such order . . . as justice . . . shall require, with due regard to the *changed* circumstances and the *financial ability* of the husband, decreasing or increasing or confirming the amount" originally fixed. (Italics supplied). It is plain that any conclusion reached by the court in a supplemental proceeding

must be based on the vicissitudes, in the period since the final decree, of the ones receiving the money and the one paying it, therefore, in the instant case it was the chancellor's task to determine from the testimony whether in the comparatively short period between the rendition of the decree and the presentation of the supplemental petition, about sixteen months, there was such an alteration in the wants of the children and the financial ability of the father as justified a fifty per cent increase in the amounts agreed to and decreed.

Because of the extreme youth of the children the passage of time, in itself, is a circumstance that hardly need be considered. The income of the father fluctuated somewhat but there is little variation in the amounts earned by him in the years 1940, 1941 and 1942; in fact, it has progressively decreased in small degree. It is true that he received a legacy after the entry of the final decree but the sum which could be earned on it would not enhance his income to an appreciable extent. In State v. Harrison, 133 Fla. 169, 183 So. 464, quoting from Schouler on Marriage and Divorce, 6th Ed., vol. 2, pp. 1993-1995, par. 1831, we approved the rule that slight change of conditions would not warrant a modification of a decree.

It was not within the court's province to decide anew the amounts which should be paid to the appellee during the periods that the children remained with her. This matter was primarily determined in the original suit with benefit of the stipulation of the parties. As we have written, the chancery court and this court can be concerned only with what has occurred affecting the fortunes of father and children since the decree. The testimony introduced by the appellee on this issue did not establish that the requirements of the children and the husband's capacity had so increased that the original amounts should be augmented correspondingly.

The appellant challenges the right of the chancellor to assess against him the outlay by the appellee for transportation from New York to Florida, and return, to attend the hearing and for board and lodging while she was in the State for that purpose. We think that his position is sound. The

marriage relationship no longer existed so he was not obligated to support her. We know of no statutory provision, and the record shows no contract, authorizing the court to require him to defray these expenses which aggregate about one hundred and fifty dollars. Of the total amount of one hundred and seventy-five dollars fixed by the chancellor there appears an item of nine dollars compensation and travel expenses for appellee's witnesses. This charge may be included in costs assessed in the case.

The orders are reversed with directions to revise them so that the monthly payments will remain as originally fixed and the costs will be reduced by the amount of one hundred and sixty-six dollars.

Reversed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.